IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**CARL CASE,**

**Petitioner,**

**vs.**                                    Civ. No. 08-542 MV/WDS

**TIM HATCH, Warden Guadalupe
County Correctional Facility,**

**Respondent**


**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]**

      This is a Petition For a Writ of Habeas Corpus filed under 28 U.S.C. § 2254 by Carl Case, who is represented by counsel. Respondent filed an Answer and Motion to Dismiss in opposition to the Petition. Petitioner filed opposition to the Motion to Dismiss. In February 2010 the Court directed the parties to file supplemental briefs. The Court has read and considered all of the pleadings, briefs and evidence submitted by the parties. The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds and recommends that the Respondent's Motion to Dismiss With Prejudice be granted. The Court makes the following findings and recommended disposition.

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

## PROCEDURAL BACKGROUND

Petitioner Carl Case was convicted by a jury on October 26, 1982 of first-degree murder and first-degree criminal sexual penetration of Nancy Mitchell, and sentenced to life imprisonment plus eighteen years. The New Mexico Supreme Court affirmed his convictions in a published opinion. *State v. Case*, 676 P.2d 241 (N.M. 1984). Subsequently, he unsuccessfully sought relief in the federal courts. *Case v. Mondragon*, 887 F.2d 1388 (10th Cir. 1989).

In 2004, Mr. Case filed a sworn, verified petition for a writ of habeas corpus in state district court. The petition arose from the recantations of trial testimony by two witnesses, the discovery of an untranscribed statement by a third witness, as well as more modern DNA testing that was performed at the request of habeas counsel. There was a lengthy evidentiary hearing in the state trial court, during which the two recanting witnesses, Audrey Knight and Paul Dunlap, testified under oath, and under threat of prosecution for perjury, that they had fabricated their 1982 trial testimony. Petitioner's trial counsel and the prosecutor offered testimony regarding the "missing" interview transcript of the third witness, Bobby Autry. The more modern DNA testing revealed no male DNA or sperm cells in the evidence taken from Ms. Mitchell's body. Ultimately, the district court denied the petition in a one page order.

Mr. Case was granted certiorari review in the New Mexico Supreme Court. That court denied relief in a written opinion. *Case v. Hatch*, 183 P.3d 905 (N.M. 2008). The court found the recantations of Knight and Dunlap cumulative and found that there was no suppression of materially favorable evidence by the prosecution in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, the New Mexico Supreme Court found that Petitioner's *Brady* claim failed for lack of materiality because there was no evidence presented at trial that Bobby Autry had harmed Nancy Mitchell, and Carl Case had testified that her death was accidental. The instant federal petition

followed.

Because Mr. Case had previously sought habeas corpus relief in the federal courts, he was required to obtain permission to proceed from the Tenth Circuit Court of Appeals. Permission was granted in a written order on July 1, 2008.

## FACTUAL BACKGROUND

On January 30, 1982, the body of Nancy Mitchell was discovered in Eddy County, New Mexico, outside of Carlsbad and near an area known locally as Six Mile Dam. The medical evidence at trial established that Nancy Mitchell had been dead for approximately three to six weeks at the time her body was discovered. She had bruises on her upper body and a fractured skull. The cause of death was exposure.

Ms. Mitchell was a teenager, and lived locally but had run away from home in early December, 1981. While a runaway, she stayed with friends and occasionally in hotels. The last undisputed sighting of Nancy Mitchell was approximately 9:00 or 10:00 p.m. on or about December 21, 1981, at the apartment of Ricky and Mary Worley. Mitchell spent the previous night at the Travelodge, but checked out that day and brought her clothes to the Worley residence. Ricky's brother Curtis Worley drove her to the apartment. Also present were Mike Tweedy, Bobby Autry and Randy Davis. Ricky and Mary Worley had been in communication with Nancy Mitchell's parents, trying to get her to go home, and were led to believe that Ms. Mitchell was going home that night. Ms. Mitchell left the residence with Bobby Autry, who claimed that he drove around with her for some time until he dropped her off at the Dairy Queen where he last saw her talking to two unknown men in a blue pickup. According to Mary Worley, when Nancy Mitchell left the apartment with Bobby Autry she was wearing the same clothing in which the body was found.

On March 9 and March 14, 1982 a local teenager, Audrey Knight, gave statements to the

3

police implicating six local men in the death of Nancy Mitchell. Although there were differences between the two statements, the gist of Knight's story was that at a party the night of January 1, 1982 she heard Curtis Worley, Carl Case, Mike Tweedy, Joe Brown, Paul Dunlap, and Randy Davis[2] talking about "gang banging" Nancy Mitchell. Shortly thereafter she saw the six men, plus Nancy Mitchell, leave the party together in Worley's Mercury Cougar. According to Knight, she was concerned for Mitchell's safety, and after fifteen minutes or so left the party in her truck to see whether she could find the group. She claimed that she saw the Cougar stopped near Six Mile Dam and pulled up to it. She claimed that she saw Nancy Mitchell with her shirt off, pinned across the seat of the car by Mike Tweedy. She stated that Carl Case walked up to her car and told her to leave. According to Knight, Nancy Mitchell called to her for help, but she left and spent the rest of the night by herself, thinking. She also stated that the next day she heard Carl Case and Curtis Worley talking about raping and knifing[3] Nancy Mitchell. Knight denied seeing Bobby Autry leave the party with the other six men, and denied seeing him at the scene of the alleged rape. Knight said that she had received anonymous threatening phone calls in which the caller told her she'd be harmed if she told anyone what she had seen. She said she believed the phone calls were from Carl

---

[2]Audrey Knight testified at trial that she had falsely accused Randy Davis of being involved in the attack, and that he was not there. According to the Affidavit for Arrest Warrant of Curtis Worley, Randy Davis told the police on January 31, 1982 that he had heard Worley and another person talking about forcing Nancy Mitchell to engage in sexual acts. That conversation occurred on or about December 21, 1981 and appears to have taken place at the apartment of Ricky and Mary Worley. Randy Davis then told the police that Curtis Worley admitted to him on or about December 23, 1981 that he and the other person had taken Nancy Mitchell to the area of Six Mile Dam, where they beat her, forcibly removed her clothing, and forced her to engage in sexual intercourse. Randy Davis did not testify at Case's trial.

[3]In her March 9 statement Ms. Knight said that Carl Case talked about stabbing Nancy Mitchell with a knife. In her March 14 statement she made no mention of a knife. According to the medical examiner, there were no knife wounds on Ms. Mitchell's body.

Case.

Bobby Autry was interviewed on January 30, February 3, March 5 and March 12, 1982. Autry originally denied having any knowledge of the crime, and denied having any sexual encounters with Nancy Mitchell, but on February 3 admitted that he and Nancy had gotten undressed on December 19, 1981[4] in his car while parked at the Flumes, and that he had partially penetrated her before she pushed him off of her. He told the police that he first lied to them about this incident because, although he had heard that Nancy Mitchell had been found dead, he did not know whether she had been raped or not, and he did not want to be implicated. He told the police that he was "teed off" when she pushed him away, but that they ended up going to a party where Nancy stayed with him for 30 or 40 minutes before going to talk to Corbin Price.

Autry said that the day after the party he saw Nancy at the Worleys', and went over to speak to her. Autry claimed that he and Nancy drove around for awhile, and that she wanted to sleep in his car. Autry said he didn't feel well that night, and told her he was going to go home. According to Autry, Nancy Mitchell told him she saw friends at the Dairy Queen, and asked to be dropped off there, and started talking to two unknown males in a blue compact pickup truck.

In Autry's February 3 statement he said that this was the last time he saw her. In his March 5 statement he told the police that he believed that he had seen Nancy Mitchell in town a few nights later, but that he couldn't be certain.

---

[4]Since the murder investigation started on January 30, 1982, exact dates for events earlier in December were difficult to pin down. Autry claimed to have a particular recollection of the date of this party because he broke a window in his car that night. He was also clear that he met Nancy Mitchell at the Worley's apartment and left with her the next night, which would have been December 20, 1981. Mary Worley said that Autry and Mitchell left her apartment together "on or about" December 21, 1981. It is apparent to the Court that Autry and Mary Worley were talking about the same event, and that it occurred either on December 20 or December 21, 1981.

On March 12, 1982 Autry took and failed a polygraph. After receiving the results of the polygraph and speaking with his father he gave a final statement to the police in exchange for immunity. Autry told the police that he was in town one night when he was picked up by Curtis Worley in his black Cougar. Also in the vehicle were Carl Case, Nancy Mitchell, Mike Tweedy, and Joe Brown in the back seat. Autry got in the front with Worley and Paul Dunlap. After driving around town, the seven of them drove out near Six Mile Dam to drink beer. Autry denied that they went to a party or met up with other people before going to the dam. Autry stated that after they got out of the car Curtis Worley hit Nancy Mitchell with his fist, knocked her to the ground, and tore her pants open. Autry did not see anybody remove Ms. Mitchell's shirt. Someone else, possibly Joe Brown, hit her in the back of the head with a stick or pipe. Autry said he ran off, but heard Nancy Mitchell yelling for help and saw the others on top of her. Autry did not see anybody else show up at the scene, but claimed to have seen the others attacking Mitchell on the ground and then putting her back into the car. Autry said that he received threatening phone calls telling him not to tell anyone about what he had seen.

Paul Dunlap was arrested in March 1982 for the rape and murder of Nancy Mitchell. The prosecution made a motion to try him as an adult. That motion was denied, and the state appealed the decision. After approximately six months in jail, and on the day before the Appellate Court issued its opinion affirming the denial of the motion to try him as an adult, Dunlap accepted the state's offer of complete immunity in exchange for his testimony against Carl Case and the others charged with raping and murdering Nancy Mitchell. Dunlap told police that he attended a party near Six Mile Dam on the night of January 1, 1982. He got a ride out to the party and after several hours was looking for a ride back home. He said he saw Curtis Worley leaving the party and asked him for a ride. According to Dunlap, Joe Brown and Bobby Autry were in the back seat with him, and

6

Curtis Worley, Nancy Mitchell and Carl Case were in the front seat of the car. According to Mr. Dunlap Mike Tweedy was not in the car and was not at the scene of the crime.

Dunlap wasn't sure where the car stopped after leaving the party, but it was in the area of Six Mile Dam. Mr. Dunlap told the police that, after stopping the car, Worley suddenly pulled Ms. Mitchell out of the car and slapped her down to the ground. At that point he was joined by Joe Brown and Carl Case, who took Ms. Mitchell's shirt and bra off. At that point, they saw headlights coming and put Mitchell back into the car. Dunlap stated that he had gotten back in the car once the attack began, but that Audrey Knight drove up, and he and Carl Case went to talk to her. Dunlap stated that he never heard Ms. Mitchell call to Audrey for help. He further stated that while Knight was present, Mitchell was in the car with her pants on but her shirt off. After Ms. Knight left, Dunlap stated that he had gotten back in the car and did not participate in the attack on Nancy Mitchell. He said he had been threatened by the others not to tell anyone what had happened.

According to the testimony of Case and his attorney at the state court evidentiary hearing, Case insisted after his arrest that he had no knowledge of how Nancy Mitchell had died. Case's defense attorney stated that he attempted to prepare an alibi defense. He said that he had a "come to Jesus" meeting with Case several days before trial, telling Case that he had very little with which to put on a defense.

At Case's trial his defense attorney presented some alibi witnesses but Case ended up testifying that he had been present with the other men and Nancy Mitchell, but that no rape had occurred, and no physical assault occurred other than Curtis Worley striking Nancy Mitchell one time. Case said that after Worley struck her, Nancy Mitchell said she had to go to the bathroom and walked out onto the dam. Case testified that he saw her fall down the hill and tumble into the grass and weeds below, where he lost sight of her. He said that it wasn't a particularly hard fall, but that

she didn't get up. He said that Curtis Worley called to her once, then the men left and drove back to town. The defense theory was that she had fallen off the earthen dam and hit her head, resulting in her death. At the evidentiary hearing Case testified that he had made up that story after being told before trial by his defense attorney that he had not been able to establish an alibi defense and that he would otherwise be convicted at trial and was facing the death penalty.

In 2003, Knight contacted Petitioner's father and told him that her trial testimony had been fabricated. Petitioner obtained counsel, who investigated Ms. Knight's claim that she had fabricated her testimony. In the course of this investigation, counsel contacted Paul Dunlap, who also admitted that his trial testimony had been false. In an affidavit given to habeas counsel, Knight stated that her testimony at trial was untrue "for various reasons, including the intense pressure I felt from law enforcement." Dunlap also provided an affidavit, in which he stated that he had no knowledge of Carl Case or anyone else attacking Nancy Mitchell, and had no knowledge how Nancy Mitchell died. Dunlap said he testified untruthfully at trial because he had been in jail for six months, was threatened with prosecution as an adult for the alleged rape and murder of Nancy Mitchell, and was offered immunity for implicating the defendants.

Investigators had occasion to review the prosecutor's file and discovered a taped interview with Bobby Autry that apparently had not been transcribed and apparently had not been provided to defense counsel before the Petitioner's trial in 1982.

## CLAIMS

Despite the voluminous record and lengthy procedural history of this case, there is only one issue presented by Petitioner for consideration by this Court: Whether the prosecution suppressed favorable and material evidence at his trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), thereby denying his right to due process of law. The Court notes particularly that, at least in terms

of Mr. Case's §2254 petition, the issue of the recantations by Knight and Dunlap is not before the Court in this matter, despite the testimony they offered at the evidentiary hearing in the state court habeas proceeding. Counsel for Petitioner acknowledged in their brief that the law regarding such recantations is not "clearly established" for purposes of §2254 of the Antiterrorism and Effective Death Penalty Act of 1996[5]. ("AEDPA")(Document 9, p. 51, n. 38) Furthermore, Petitioner does not present an ineffective assistance of counsel claim in his current petition. Petitioner's ineffective assistance claim was part of his first federal petition.

## STANDARD OF REVIEW

A state prisoner may not file a second or successive § 2254 motion in district court unless it is first authorized by a panel of the appropriate court of appeals. 28 U.S.C. §2244(b)(3)(A). Petitioner sought and obtained leave to file a second § 2254 motion from the Tenth Circuit on the basis that he had made a prima facie showing that the application satisfied the requirements of §2244(b). (Document #5). However, obtaining leave to file a second petition is not the end of the Section 2244 analysis. § 2244(b)(4) requires the District Court to dismiss any claim presented in a second or successive petition unless:

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[5] As noted below, the recantations do factor into the §2244(b)(2)(ii) evaluation of the "evidence as a whole."

§ 2244(b)(2)(B)(i)-(ii); .

In its opinion authorizing the filing of a successive habeas petition, the Tenth Circuit concluded that Petitioner had made a prima facie showing that the "missing" Autry statement qualified as newly discovered evidence under §2244(b)(2)(B)(I) and that it was an allegation of constitutional error. The issue of materiality was a matter for further exploration by the district court.

## DISCUSSION

**1. §2244(b)(2)(B)(i) Analysis**

During the investigation of Nancy Mitchell's death Bobby Autry gave the police four taped statements. There is no question that the January 30, March 5, and March 12 statements were transcribed and copies were provided to Petitioner's counsel before Carl Case's trial. The February 3 statement is the "missing" statement.

Habeas counsel for Petitioner discovered the taped interview on one side of a cassette tape. Testimony at the evidentiary hearing established that after investigating officers taped interviews such as this, the tape was sent to be transcribed by stenographers. Once transcribed, the statement was provided to the prosecuting attorney, who maintained an "open file" policy with defense counsel. The cassette in question had Bobby Autry's February 3 interview on one side, and an interview with another witness on the flip side. No transcript of the February 3 interview was ever found in the files of the prosecutor, police department, or defense counsel. Additionally, although Autry testified in several trials arising from the death of Nancy Mitchell, the statement does not appear to have been produced or used to cross examine him in those other trials.

Furthermore, although Petitioner's counsel have attributed nefarious motives to the prosecutor in the 1982 trial, there is no evidence or testimony that suggests that the prosecutor was

in possession of a transcript of the February 3 interview.  During the trial, the prosecutor asked Autry if he had ever had sexual intercourse with Nancy Mitchell and Autry responded that he had not, but that he had tried. (Tr. 980, 1031).  This information, however, was also contained in the March 5 statement by Autry.  In that statement, Autry told the police that he had "tried making out with her," "got her clothes and we were drunk," and was asked "Is this when you tried to have. . . make love. . .or have sexual intercourse with her, after that you took her home."  Trial defense counsel did not delve into this line of questioning on cross examination.

The New Mexico Supreme Court appears to have assumed that the February 3 statement was not transcribed and not produced to defense counsel. This Court agrees.  Respondents note that defense counsel's testimony at the evidentiary hearing was not absolutely unequivocal when he was asked whether he had seen a transcript of the February 3 statement.  However, over twenty years had passed between the 1982 trial and defense counsel's testimony at the evidentiary hearing.  And while the prosecutor did testify that some of the "missing" statement sounded familiar, the March 5 statement of Autry included a reference to his attempts to have sexual relations with Nancy Mitchell.

Given the transcription procedure described above, the Court finds that it was reasonable for defense counsel to assume that the interview transcripts contained in the prosecutor's file represented all recorded interviews, and that the "due diligence" standard of §2244(b)(2)(B)(i) did not require the defense attorney to listen independently to the recorded interviews to verify that all of them had been transcribed.  The Court concludes that Petitioner has satisfied the requirements of §2244(b)(2)(B)(i) in showing that the February 3 statement of Bobby Autry qualifies as newly discovered evidence and could not have been discovered previously through the exercise of due diligence.

**2.  §2244(b)(2)(B)(ii) Analysis**

The second step in the analysis is to determine whether "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." §2244(b)(2)(B)(ii).  In terms of this case, the constitutional error is the purported *Brady* violation, i.e., the failure to produce the transcript of the February 3, 1982 Bobby Autry interview.  The question for the Court is whether Petitioner can establish by clear and convincing evidence that, had the February 3 statement been timely produced, and viewed in the light of the evidence as a whole, no reasonable fact finder would have found him guilty of the underlying offense.  Petitioner alleges that his defense was materially prejudiced by the prosecution's failure to transcribe the February 3 statement because, had it been produced, Carl Case would not have testified at trial and his defense would have been that Bobby Autry was the actual killer.

Looking first at the missing statement, the Court finds it less significant than suggested by counsel for Petitioner.  As noted above, Autry told the police in his March 5 statement that he had "tried making out with her," "got her clothes and we were drunk," and was asked "Is this when you tried to have. . .make love. . .or have sexual intercourse with her, after that you took her home."  Although there is less detail in this statement than the February 3 statement, the statement does reveal that Autry had undressed Nancy Mitchell and attempted to have sexual intercourse with her. The March 5 interview does not include an exact description of his "attempt" to have sexual intercourse.  In the February 3 interview Autry told police officers that he had attempted to "make out" with Nancy Mitchell in his car, that his penis had penetrated "about half" into her vagina before she pushed him back, and that he had not ejaculated.  The February 3 interview also included

Autry's statement that he was "teed off" when Mitchell pushed him off.

The § 2244(b)(2)(B)(ii) standard, however, is very high, requiring the Petitioner to prove by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. The Court concludes that the details of Petitioner's sexual encounter with Nancy Mitchell that are included in the missing statement but not the March 5 statement are not significant enough to meet this high standard. The Court cannot conclude that no reasonable factfinder would have found Petitioner guilty had the missing statement been provided to defense counsel before trial.

The Court concludes the same regarding the additional DNA evidence presented at the evidentiary hearing. The more sophisticated testing revealed no evidence of male DNA or sperm cells. This evidence is neither incriminating nor exonerating.

Finally, the Court considers the combined impact of the above evidence and the recantations of Audrey Knight and Paul Dunlap. As noted by the New Mexico Supreme Court, the recantations of Knight and Dunlap were no more than efforts to revert to the original statements they gave to the police that they did not know anything about the events leading to Nancy Mitchell's death. *Case v. Hatch*, 144 N.M. 20, 32 (N.M. 2008). The fact that Dunlap had received immunity for his testimony was presented to the jury at trial. Both witnesses were vigorously cross examined at trial and admitted that they had lied to the police. Knight admitted that she had falsely accused Randy Davis of being one of the attackers. In addition, at trial there was the testimony of Autry about the circumstances of the alleged murder which, though certainly not identical to the other witnesses, was corroborative in many areas. Carl Case also corroborated portions of the other witnesses' statements by placing himself at the scene and describing the deceased being hit by one of the co-defendants. In addition, the testimony of the pathologist as to the cause of death, i.e., a blow to the head leading

13

to unconsciousness and death by exposure, was also corroborative of parts of the testimony by the above witnesses. The pathologist also testified that Mitchell's hands, the top of her feet, and front lower torso had scrape marks consistent with the body being dragged, which was inconsistent with an accidental fall.

Viewing the evidence above "as a whole," the Court cannot conclude that it rises to a level sufficient to establish by clear and convincing evidence that, but for constitutional error, even when taking into consideration the recantations, no reasonable factfinder would have found Petitioner guilty. Accordingly, the Court recommends, pursuant to § 2244(b)(4) that this matter be dismissed with prejudice.

## RECOMMENDED DISPOSITION

The Court recommends that Carl Case's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 be DISMISSED with prejudice.

_____
W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE