IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARL CASE,

       Petitioner,

      vs.                                                    No. 08-CV-0542 MV/WDS

TIM HATCH, Warden, Guadalupe
County Correctional Facility,

       Respondent.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Respondent's Motion for Stay Pending Appeal [Doc. 97]. The Court, having considered Respondent's Motion and corresponding Memorandum Brief in Support of the Motion [Docs. 97 & 99], Carl Case's Response in Opposition to the Motion [Doc. 103], Respondent's Reply [Doc. 105], the record, the relevant law, and being otherwise fully informed, will **DENY** the Motion.

## BACKGROUND

On March 28, 2011, the Court conditionally granted Mr. Case's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody and entered final judgment in his favor [Docs. 93 & 94]. In its Memorandum Opinion and Order [Doc. 93], the Court determined that the State of New Mexico violated the constitutional disclosure requirements articulated in *Brady v. Maryland* and its progeny in Mr. Case's 1982 trial; that his conviction for the rape and murder of Nancy Mitchell was therefore unconstitutional; that when viewing the *Brady* violation in light of the evidence as a whole, Mr. Case had demonstrated by clear and convincing evidence that no reasonable factfinder would have convicted him of the rape or murder of Nancy Mitchell; that the New Mexico Supreme Court decision denying Mr. Case's

*Brady* claim was contrary to and involved an unreasonable application of clearly-established federal law; and that the New Mexico Supreme Court's decision also amounted to an unreasonable determination of the facts in light of the evidence presented. The Court thus granted Mr. Case habeas relief and ordered the State of New Mexico to notify the Court whether or not it intends to re-try Carl Case within thirty days of entry of the March 28, 2011 Order. The Order further provides that "[u]pon expiration of this thirty-day period, the State shall take prompt steps to initiate proceedings against Mr. Case, or shall cause him to be released from custody." Doc. 93 at 139.

On April 21, 2011, Respondent filed a Notice of Intent to Re-try Petitioner [Doc. 104]. Attached to this Notice is an Affidavit of Janetta B. Hicks [Doc. 104-1], in which Ms. Hicks avers, in her official capacity as the District Attorney for the Fifth Judicial District, that as of April 21, 2011, the State of New Mexico intends to re-try Carl Case for the first-degree murder and first-degree criminal sexual penetration of Nancy Mitchell.

By the instant Motion, Respondent seeks an ordering staying the Court's March 28, 2011 Order requiring prompt re-trial and maintaining Mr. Case in state custody pending resolution of Respondent's appeal to the United States Court of Appeals for the Tenth Circuit.

## **ANALYSIS**

Federal Rule of Appellate Procedure 23(c) provides:

> While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court order otherwise—be released on personal recognizance, with or without surety.

This rule creates a presumption that a prisoner will be released from custody pending appellate review of a favorable decision. *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987). Accordingly,

Respondent has the burden or persuading the Court that a release pending appeal is not warranted here. *Lee v. Lampert*, No. CV 02-300-CL, 2009 WL 1118708, at *2 (D. Or. April 14, 2009); s*ee also Toney v. Miller*, No. 06-1111, 2008 WL 2952551 (E.D. La. July 28, 2008).

Factors regulating the issuance of a stay include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. The Court should also consider whether the petitioner poses a flight risk, whether the State has established that there is a risk that the petitioner will pose a danger to the public if released, and the State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal. *Id.* at 777.

**A.     Respondent's Likelihood of Success on the Merits**

Respondent devotes much of his Motion to arguing that the Court's legal analysis was erroneous. He raises four grounds that he argues make him likely to prevail on appeal. To the extent that Respondent's argument amounts to a recitation of those arguments already thoroughly reviewed and rejected in the March 28th Memorandum Opinion and Order, the Court will not revisit them. Rather, the Court will summarize Respondent's new arguments and explain its conclusion that he is not likely to succeed on appeal. Respondent's four specific arguments are as follows: (1) the prosecution did not suppress *Brady* evidence; (2) the recantations were not credible; (3) Bobby Autry's February 3, 1982 statement is immaterial; and (4) Mr. Case did not exercise due diligence as required under 28 U.S.C. § 2244(b)(2)(B)(i).

First, Respondent advances a general argument that AEDPA's deferential standard of review tips the scale in his favor on appeal. He concludes that "[e]ven without looking at

3

Respondent's individual claim . . . [t]he standard of review will highly favor Respondent on appeal and reversal will be warranted based on the slightest error in applying the AEDPA or in failing to accord the state courts adequate deference in their rulings." Doc. 99 at 8. Respondent accordingly fails to distinguish this case from any other habeas case, and the Court does not find his argument that the standard of review will favor him to be persuasive. This Court was well aware of AEDPA's deferential standard applying to review of state court decisions when it granted Mr. Case's petition, and the Court still believes that Mr. Case indeed satisfied AEDPA's burden. The standard of review of the Court's relevant legal conclusions is no different under AEDPA than any other case. The Tenth Circuit will review this Court's legal conclusions de novo.

    **1.**    **Suppression**

Contrary to Respondent's presentation in his Motion, the Court did not base its conclusion that the February 3rd interview was suppressed "solely on a finding by the Magistrate Judge that the interview was not transcribed and not 'produced' to defense counsel." Doc. 99 at 9. Respondent does not appear to dispute the Court's conclusion that the February 3rd statement was never transcribed, but he states in a conclusory fashion that the UNM law students' discovery of the tape in 2005 means that it was obviously available to defense counsel in 1982, had he conducted a diligent investigation. However, the testimony at the state evidentiary hearing established that: (1) the Sheriff's Department policy was to transcribe all interviews and provide them to the District Attorney's Office; (2) the District Attorney's Office represented to defense counsel that the transcriptions represented complete records of the recorded interviews; and (3) the District Attorney's Office did not provide counsel with the tapes themselves, but rather only disclosed the transcriptions. Doc. 93 at 9. Moreover, the portions of the co-

defendants' trials this Court cited in its Memorandum Opinion and Order all but conclusively demonstrate that none of Mr. Case's co-defendant's attorneys were aware of the tape. As defense counsel conducted a reasonable investigation in light of the District Attorney's Office's representations and its office policy with respect to disclosure of transcriptions, Respondent is not likely to prevail on this argument.

### 2.     Credibility of the Recantations

The Court addressed this argument in its April 28, 2011 Memorandum Opinion and Order [Doc.113]. For the same reasons the Court denied Respondent's Motion to Alter Judgment, the Court finds that Respondent is not likely to prevail on this argument on appeal.

### 3.     Materiality

Respondent misrepresents the Court's analysis when he states that the finding of materiality was "based largely on the determination that Petitioner's trial strategy would have differed if defense counsel has seen the February 3rd interview." Doc. 99 at 14. The Court additionally based its conclusion on the February 3rd statement's potential to undermine the jury's confidence in the criminal investigation, and the fact that Defendant would have had no need to put forth an incredible alibi defense if he could have presented an alternative defense. Doc. 93 at 31-36.

The Court declines to repeat its analysis of materiality in response to Respondent's arguments that the suppressed statement was immaterial. The Court will only highlight Respondent's misrepresentation of the record, wherein he states that Mr. Autry stated on March 5, 1982 that he "'got [Ms. Mitchell's] clothes' off." Doc. 99 at 15. In fact, Mr. Autry stated that he "got her clothes and we was drunk." Tr. 3/5/82 Autry Statement at 3. Whereas the Magistrate Judge inferred from this statement that Mr. Autry had undressed Ms. Mitchell, this

5

finding does not reflect a thorough review of the remainder of the evidence in this case.  The Court must disagree with Respondent's assertion that it would be reasonable – in light of the other evidence – to interpret Mr. Autry's statement to mean that he undressed Ms. Mitchell.  Any competent defense counsel, having reviewed the multiple interviews of witnesses who explained that Ms. Mitchell, a runaway, left clothes at various people's houses and later retrieved them, could not reasonably interpret Mr. Autry's March 5th statement to mean that he undressed Ms. Mitchell.

The Court is well aware that materiality requires a "reasonable probability," rather than a "reasonable possibility" of a different outcome.  *See* Doc. 93 at 11-12, 22-23, 38, 110-19, 130 & 134-35.  Here, Mr. Case demonstrated a reasonable probability of a different outcome.  For this reason, Respondent is unlikely to prevail on appeal with respect to his materiality argument.

  **4.**  **Due Diligence**

Respondent argues that the Court erred in determining that Mr. Case satisfied AEDPA's requirement that "the factual predicate for [his] claim could not have been discovered previously through the exercise of due diligence."  28 U.S.C. § 2244(b)(2)(B)(i).  It appears that Respondent has never – until now – disputed that Mr. Case satisfied this provision.  *See* Doc. 5 at 7 ("We first conclude, and the State does not dispute, that Mr. Case has made a prima facie showing that the Autry statement qualifies as newly-discovered evidence under § 2244(b)(2)(B)(i); that is, that the factual predicate of Mr. Case's claim could not have been discovered previously through the existence of due diligence.").  Like at the prima facie stage, Respondent failed to raise this due diligence argument in his Motion to Dismiss the Application for Writ of Habeas Corpus.  *See* Docs. 17-18.  He further failed to object to the Magistrate Judge's finding that Mr. Case had satisfied the due diligence requirement.  *See* Doc. 41 at 11

(concluding that "the February 3 statement of Bobby Autry qualifies as newly discovered evidence and could not have been discovered previously through the exercise of due diligence," to which Respondent filed no objections).  Respondent filed an objection to the December 9-10, 2010 evidentiary hearing, without mentioning the question of due diligence or otherwise specifying his bases for objecting.  *See* Doc. 63.  He further filed a memorandum of law after the evidentiary hearing [Doc. 75], in which he reiterated his objection to the hearing but did not address the question of due diligence.

Respondent now challenges Mr. Case's due diligence for the first time in his Motion to Stay, stating that "Petitioner could have discovered the February 3rd interview with reasonable diligence by availing himself of the district attorney's office open file policy, as shown by the law students' discovery of the tape on a single trip to Carlsbad."  Doc. 99 at 17-18.  The Court first notes that Respondent advances no evidence to support his assumption that the tape's presence in the file in 2005 – which had been moved between various locations – indicates that it was in the file during the federal habeas litigation in the 1980s.  More importantly, in order to demonstrate a likelihood of success on appeal, Respondent must first demonstrate a likelihood that the Tenth Circuit will even consider his argument.  As he had multiple opportunities to raise this due diligence argument prior to the Court's issuance of its final judgment, yet failed to raise it in any of his briefs, Mr. Case has not had occasion to present evidence pertaining to the first federal habeas litigation.  Accordingly, the Tenth Circuit will almost certainly decline to consider the argument.  *See Utah Envtl. Cong. v. Russell*, 518 F.3d 817, 828-29 (10th Cir. 2008) ("Generally, we do not consider issues not presented to, considered and decided by the trial court, because an appellant's new argument gives rise to a host of new issues, and Appellee had no opportunity to present evidence it may have thought relevant on these issues.") (internal

quotation marks, brackets, and citation omitted). The Court therefore concludes that Respondent has failed to demonstrate a likelihood of success on appeal.

**B.     Irreparable Injury to Respondent and the Public Interest**

Respondent argues that as a jury found Petitioner guilty, the State of New Mexico "has an exceedingly great interest in maintaining Petitioner's custody while it seeks to uphold the jury's verdict in the present collateral proceedings or, alternatively, while it seeks to vindicate the jury's verdict at a re-trial." Doc. 103 at 18. Respondent further argues that "it would undermine principles of judicial economy to require the simultaneous prosecution of a re-trial" as Respondent proceeds on appeal. *Id*. While this Court acknowledges that the State has an interest in preservation of judicial resources, there is no evidence that the State will be irreparably injured if it proceeds contemporaneously with both the appeal to the Tenth Circuit and the re-trial of Mr. Case. Further, this Court declines to find that the State's interest in judicial economy, though real, is comparable to Mr. Case's interest in ending what this Court has already determined is an unconstitutional confinement. To the contrary, the argument that judicial economy requires a stay "can be made as a matter of course in any case where habeas corpus relief has been granted and the state is appealing," yet *Hilton* "clearly recognized the presumption in favor of release." *Burbank v. Cain*, No. 06-2121, 2007 WL 2809996, at *3 (E.D. La. Sept. 24, 2007 (citing *Hilton*, 481 U.S. at 774).

Further, Respondent's assertion that the State has an interest in maintaining Petitioner in custody while it seeks to uphold the jury's verdict or, alternatively, seeks to vindicate the verdict at a re-trial, fails to acknowledge the bigger picture. As other courts have recognized, the State does not have a defensible interest in the continued incarceration of someone whose conviction was obtained in violation of his constitutional rights. *Poindexter v. Booker*, No. 05-CV-71607,

2007 WL 2780556, at *3 (E.D. Mich. Sept. 20, 2007). This is particularly true where, as here, Mr. Case has demonstrated by clear and convincing evidence that no reasonable factfinder would have convicted him in light of the evidence as a whole. Rather, the State and the public have an interest in ensuring the integrity of the United States Constitution. *See Avery v. Prelesnik*, No. 1:04-CV-289, 2008 WL 108885, at *3 (W.D. Mich. Jan. 7, 2008) (rejecting argument that "the public deserves and expects that the integrity of state convictions will be honored in all but the most extraordinary cases" and explaining that "[c]ontrary to Respondent's argument, the Court believes the public expects that courts will uphold the integrity of the United States Constitution if confronted with an improper conviction"); *Burbank*, 2007 WL 2809996, at *4 ("[T]he public has a significant interest in the release of a petitioner a court has found to be incarcerated because of significant failures in a state's criminal justice system."); *Harrison v. Ryan*, No. 87-7439, 1990 WL 45740, at *3 (E.D. Pa. Apr. 12, 1990) ("The Commonwealth has no interest in preserving the finality of improperly obtained judgments. Nor would the public interest dictate a ruling that the Commonwealth should be able to keep a petitioner, who this court found was convicted in violation of . . . the United States Constitution, in custody for a lengthy period pending retrial."). As this Court has found that Mr. Case's conviction was unconstitutionally obtained, it finds that the State's interest in enforcing that conviction is outweighed by the State and public's interest in ensuring the integrity of the United States Constitution.

Respondent further argues that as Mr. Case received a life sentence for his conviction of first-degree murder and an eighteen-year sentence for his conviction of first-degree criminal sexual penetration, "[e]ven accounting for good time credits and the opportunity for parole after thirty years on the murder conviction, see N.M. Stat. Ann. § 31-21-10(A) (2010), Petitioner would be subject to nearly fourteen additional years of incarceration, under the existing

judgment." Doc. 99 at pp. 18-19. Respondent contends that in light of the duration of Mr. Case's sentences left to be served, the State has a strong interest in continuing custody and rehabilitation of Mr. Case pending a final determination of the case on appeal. *See Hilton*, 481 U.S. at 777 (recognizing that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal" is "strongest where the remaining portion of the sentence to be served is long"). While the Court acknowledges the duration of Mr. Case's sentences and the State's interest, it also recognizes that Mr. Case has already served nearly thirty years in prison – the vast majority of his adult life – pursuant to unconstitutional convictions.

Finally, Respondent asserts that due to the duration of the sentence Mr. Case faces should Respondent succeed on appeal, "Respondent believes that there is a significant risk of flight." Doc. 99 at p. 19. In his moving papers, however, Respondent offers no evidence specific to Mr. Case that would suggest he is a flight risk. Respondent does not suggest that Mr. Case has previously attempted to flee or that his behavior while incarcerated indicates that he is a flight risk. Respondent likewise argues, for the first time in his Reply, that Mr. Case poses a danger to the public if released due to the severity of the crimes at issue and due to findings made by the Court in 1988 regarding his violent and anti-social character. Respondent, however, offers no evidence regarding Mr. Case's recent behavior from which one could conclude that as of today, he would pose a threat to the public if released. This Court declines to rely on findings more than twenty years old in assessing whether Mr. Case, if released, would pose a threat to the public interest. The Court will not infer that Mr. Case is a flight risk without evidence to support such conclusion.

C.   **Substantial Injury to Mr. Case**

Mr. Case has been imprisoned for nearly thirty years for a conviction that this Court has found constitutionally infirm. Each day that Mr. Case remains incarcerated in violation of his constitutional rights results in irreparable injury to him. *Poindexter*, 2007 WL 2780556, at *3-4 (recognizing petitioner "has an unassailable right not to be incarcerated pursuant to a constitutionally infirm conviction" and that he would suffer irreparable harm each day he remains imprisoned pursuant to a conviction rendered in violation of the United States Constitution); *see also Burbank*, 2007 WL 2809996, at *3 (a successful habeas petitioner's interest in release is always substantial); *Harrison*, 1990 WL 45740, at *2 (finding that "the liberty interest of an improperly convicted prisoner is stronger than any injury that may be caused to the Commonwealth in releasing petitioner from custody pending retrial"). Respondent would prefer that Mr. Case remain in custody on a conviction that this Court has found to be unconstitutional for the duration of appeal and, if this Court's decision is affirmed, would presumably seek to maintain custody of Mr. Case until the conclusion of retrial. This process will likely take more than a year and potentially much longer. It is hard to adequately state the significance of the potential injury to Mr. Case that could result from a stay, particularly if this Court's decision is affirmed and Mr. Case is acquitted on retrial. Mr. Case has been incarcerated most of his adult life on a constitutionally infirm conviction. He cannot be given back the nearly thirty years he has spent in prison and this Court refuses to unnecessarily extend the period of incarceration where it has already found the conviction to be constitutionally unsound.

Without acknowledging the full extent of Mr. Case's interest, Respondent argues that Mr. Case would not be irreparably injured as he also received a one-year sentence in a separate contempt proceeding and would thus be subject to continued incarceration as to that separate

offense. The Court finds this argument unavailing. Respondent cites no authority for his assumption that this second consecutive sentence remains to be served in full despite this Court's finding that Mr. Case's earlier conviction is unconstitutional. In *Goodwin v. Page*, 418 F.2d 867, 868 (10th Cir. 1969), the Tenth Circuit rejected the position Respondent advances – that a later consecutive sentence begins to run only from the date an earlier conviction is declared legally invalid – and instead found that where an earlier sentence is declared void, a later consecutive sentence commences running independently from the date of its imposition. *See also Johnson v. Henderson*, 455 F.2d 983 (5th Cir. 1972) (crediting time served on first void sentence to later consecutive sentence where such time was served after the second sentence was imposed and delayed commencement of the subsequent sentence); *United States ex rel. McKee v. Maroney*, 264 F. Supp. 684 (M.D. Pa. 1967) (same). As Mr. Case's one-year sentence for contempt commenced running from the date of its imposition, Doc. 74, Ex. A, the sentence has long been complete and serves as no basis to extend Mr. Case's incarceration.

Alternatively, Respondent argues that as under state law, Mr. Case would likely be subject to pre-trial detention even absent a stay, a stay will not irreparable injure him. Assuming, without deciding, that Respondent is correct that Mr. Case would likely be subject to pre-trial detention, there is still significant irreparable injury to Mr. Case as the period of detention would be greatly extended by the issuance of a stay. Respondent is not asking the Court simply to maintain Mr. Case in custody while the State promptly retries him; instead, Respondent is requesting that Mr. Case be held in custody for the entire duration of Respondent's appeal before the State takes any serious steps to retry him. Accordingly, the Court finds that issuance of the stay would substantially injure Mr. Case and this factor weighs heavily in favor of denying a stay.

## **CONCLUSION**

On balance, the Court finds that the above factors weigh heavily against the issuance of a stay. **IT IS THEREFORE ORDERED** that Respondent's Motion for Stay Pending Appeal [Doc. 97] is **DENIED**.

Dated this 2nd day of May, 2011.

_____
**MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE**

*Attorneys for Petitioner:*
Todd A. Coberly
Peter Schoenburg
Marc M. Lowry

*Attorney for Respondent:*
Margaret E. McLean

*Attorney for Witness Audrey Knight:*
Jacquelyn Robins

*Attorney for Witness Paul Dunlap:*
Erlinda O. Johnson